# STATE v. LOUIS W. MARTIN.[1]

## December 20, 1918.

## No. 21,088.

**War — discouraging enlistment — approving another's speech.**
1. One who heard a speech may advocate the doctrine of the speech to another who heard it by asserting that he knows it to be true and accepts and affirms it.

**Same.**
2. The fact that he made his assertions in a colloquy with the other does not relieve him from responsibility for them.

**Same — case followed.**
3. Other questions are disposed of in the decision in State v. Gilbert, 141 Minn. 263.

Defendant was indicted by the grand jury of Goodhue county charged with the crime of discouraging enlistment in the military and naval forces of the United States, tried in the district court for that county before Johnson, J., and a jury which found him guilty as charged in the indictment. Defendant's motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*George Nordlin, Thomas V. Sullivan, Frederic A. Pike* and *Arthur Le Sueur,* for appellant.

*Clifford L. Hilton,* Attorney General, and *Thomas A. Mohn,* County Attorney, for respondent.

TAYLOR, C.

This case and the case of State v. Gilbert were argued and submitted together. Nearly all the questions raised are common to both cases and have been considered and determined in the decision in the Gilbert case,

[1]Reported in 169 N. W. 792.

141 Minn. 263, 169 N. W. 790. This case presents one or two questions, however, not involved in the Gilbert case.

Defendant arranged the meeting referred to in the Gilbert case, and was with the speakers on the speakers' stand throughout the meeting and heard all that was said. The indictment in this case sets forth the statements made by Gilbert in his speech at that meeting which are set forth in the indictment in the Gilbert case, and also statements of a similar tenor made by N. S. Randall in his speech at that meeting, and then charges that, at the village of Kenyon, on September 22, 1917, defendant unlawfully and wilfully stated to certain named persons: "That he, the said Louis W. Martin, was a pro-German and that he, the said Louis W. Martin, knew that the aforesaid statements made by said Joseph Gilbert and N. S. Randall, as hereinbefore set forth, were true and that he, the said Louis W. Martin, affirmed and accepted said statements, and that he, the said Louis W. Martin, accepted and considered the aforesaid teachings and statements, made by said Joseph Gilbert and N. S. Randall as hereinbefore set forth, as his, said Louis W. Martin's standard of patriotism."

It is urged that the facts alleged do not constitute a violation of the statute, for the reason that the statements conveying the forbidden teaching were not made by defendant but by others and at a different time. But we fail to see why a person who heard these statements does not teach the same doctrine when he asserts to another person who heard them that he knows them to be true and accepts and approves them as his standard of patriotism.

Defendant insists that his statements were made under such circumstances that they did not constitute teaching or advocacy within the meaning of the statute. They were made in a barber shop. When defendant entered, a soldier in uniform was in the chair being shaved, and Dr. Gates and a brother of the barber were also in the shop. As he entered, defendant, to use his own language, asked the barber: "Can you give a pro-German a shave?" Some discussion followed between defendant and the soldier in which, according to the witnesses, defendant declared himself a pro-German and lauded La Follette's speech made at St. Paul. Whereupon Dr. Gates asked defendant if he accepted as his standard of patriotism the speech made by La Follette in St. Paul and the speeches made

by Randall and Gilbert in Kenyon; and, in the colloquy which followed, defendant made the statements of approval charged in the indictment. The doctor took strenuous exception to these statements. The facts do not bring the case within the decisions cited by defendant to the effect that a person, who has been inveigled into the commission of an offense for the purpose of entrapping him, may show that fact as a defense to the prosecution. And his assertions were none the less a teaching and advocacy of the doctrine promulgated by Randall and Gilbert, whether his views were accepted or rejected by those to whom he expressed them.

All the issues were fully and fairly submitted to the jury, and we find no sufficient ground for disturbing their verdict.

Judgment affirmed.

HOLT, J. (dissenting.)

I dissent. Defendant's offensive and uncalled for remarks which started the brawl did not constitute a violation of the law. And I do not think that his mere affirmative answer to the question put to him, during the altercation, whether he approved the sentiments expressed in public addresses by certain persons some weeks previous constitutes a violation of the statute.

A reargument having been granted and made, the following opinion was filed on August 1, 1919:

PER CURIAM.

In this case a reargument was granted and the matters urged on the reargument have again been considered with the result that we adhere to our former decision except in the respect hereinafter stated.

We are satisfied that the constitutional guaranties relating to freedom of speech did not secure to defendant the right to teach or advocate that citizens should not aid the Government in the prosecution of the war. Since the filing of our former opinion, the Supreme Court of the United States has had these constitutional provisions under consideration in cases arising under the Federal Espionage Act, and the decisions of that court fully sustain our own decisions. In Schenck v. United States, 249 U. S. 47, 39 Sup. Ct. 247, 63 L. ed. 470, involving a prosecution under the Federal law, the court say:

"The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent. It is a question of proximity and degree. When a nation is at war many things that might be said in time of peace are such a hinderance to its effort that their utterance will not be endured so. long as men fight and that no court could regard them as protected by any constitutional right." Frohwerk v. United States, 249 U. S. 204, 39 Sup. Ct. 249, 63 L. ed. 561, is to the same effect.

We are also satisfied that the court ruled correctly in admitting in evidence what was said and done at the public meeting in Kenyon. Debs v. United States, 249 U. S. 211, 39 Sup. Ct. 252, 63 L. ed. 566.

The majority of the court, however, are of opinion that by reason of the peculiar circumstances of this case, the question as to whether the language used by defendant in his altercation in the barber shop constituted teaching and advocating that citizens of this state should not aid the United States in prosecuting the war against the public enemies, should be submitted to another jury.

The judgment is reversed and a new trial granted.